## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                **5:06cr59/RS**
                                                       **5:08cv144/RS/MD**

**SOLOMON SMITH**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 and supporting memorandum of law (doc. 80 & 81). The government has filed a response (doc. 85) and the defendant has filed a reply (doc. 95). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I. BACKGROUND

Defendant was the lone defendant in a two-count indictment charging him with conspiracy to distribute and to possess with intent to distribute more than fifty grams of cocaine base and possession with intent to distribute more than fifty grams cocaine base on a date certain. (Doc. 11). CJA counsel Jean Downing's motion for the determination of mental competency to stand trial and motion for the

determination of the existence of insanity at the time of the offense and motion to continue trial was granted. (Doc. 18 & 19). Ms. Downing withdrew when defendant's family retained Martin LeRoy Black to represent him. (Doc. 21, 22, 24). After evaluation, the defendant was found competent to stand trial and sane at the time of the offense. (Doc. 26, sealed, doc. 29, doc. 60 at 3-4). The government filed an information and notice of intent to seek enhanced sentence based on a single prior controlled substance conviction. (Doc. 28). Defendant pleaded guilty pursuant to a written plea and cooperation agreement pursuant to which the government dismissed count II of the indictment. (Doc. 34 & 35). A separate statement of facts was filed. (Doc. 33). As the detail contained within the statement of facts and the defendant's response thereto is relevant to the claims raised in the instant motion, this portion of the rearraignment proceedings will be set forth in some detail. (Doc. 60 at 12).

When the court asked whether the facts contained in the statement of facts were true and correct, the defendant's attorney stated as follows:

> I've discussed this with Mr. Smith and some of them are true and some of them are not true.
> I explained to Mr. Smith that according to the procedure before the Court today, that even though he signed the document, he's not agreeing to the facts, what he is doing is indicating to the Court that he is aware that these are the facts that the U.S. Government indicates that they are prepared to present if he goes to trial.
> And he did understand that he would have the opportunity upon the Court's recitation of the facts, to indicate to the court, the part of the facts that he does, in fact, disagree with.

(Doc. 60 at 12-13)

Counsel agreed that his client was receiving cocaine and crack cocaine from a Cedrese Bellamy, but disagreed with the nine ounce quantity stated by the government. Counsel stated that his client was "not sure of the amount but he understands that is what Mr. Bellamy would testify to." (Doc. 60 at 14). Counsel

further explained that defendant believed the amount to be less than 9 ounces, but did not know how much less. (*Id.* at 15). Defendant disagreed with the government's assertion that he had told the informant that he would handle more drugs after another individual's arrest or that he had offered to "take care of" someone who was giving Bellamy problems. (*Id.* at 15). The court observed that these issues had no bearing on the elements of the offense. (*Id.* at 16). The government explained that on June 1, 2006, Smith agreed to meet Bellamy and pick up crack cocaine for sale. He paid Bellamy $400 from a previous drug sale and then accepted three ounces of powder cocaine and four ounces of crack from Bellamy, agreeing to pay $4200 after selling them. At this point counsel for the defendant stated that when defendant went to Bellamy's house he had no intention of accepting that quantity of cocaine and crack, that he was expecting to get the "usual amount." Counsel noted that the videotape should reflect that he questioned Bellamy saying words to the effect of "what is all of this?" Mr. Bellamy told defendant that he was giving him the drugs on credit and he would not have to pay until after the sale. Counsel concluded by saying that his client "admits that he did, in fact, take possession of it, but it was only because of the fact that it was presented in the way that it was and that he did not have to pay for it." (*Id.* at 17). The court asked whether defendant contended that he was coerced or otherwise improperly influenced into accepting the drugs, and counsel responded that he did not. (*Id.*)

The government next stated that the defendant had told a transporting officer after his arrest that he would beat the charge and go to Florida State Hospital, claiming that he was insane and went to a special school. (Doc. 60 at 18). Counsel stated that defendant totally denied having made any part of the statements attributed to him, and the court again noted that these alleged statements had no real bearing on the elements of the offense (*Id.*) Defendant indicated that he agreed that he purchased and sold crack and powder cocaine, but indicated that he disagrees with the quantities to which the witnesses would allegedly testify. (*Id.* at

19).  Counsel indicated that he brought the facts of defendant's disagreement out only for the court's consideration during sentencing.  (*Id.*)

Defendant indicated that he understood that the evidence was sufficient to support a finding that he was guilty of the charge in count I of the indictment.  (Doc. 60 at 20).  The court explained the potential sentence, including the possible effect of the enhancement, and the meaning of supervised release, and defendant agreed that he understood.  (*Id.* at 20-22).  Both counsel and the court explained the sentencing guidelines to the defendant, as well as the fact that there was no way that counsel or the court could predict the defendant's ultimate sentence. (*Id.* at 22-25). The defendant answered routine questions about having discussed the charges and the plea agreement with counsel, being satisfied with his attorney's performance, and desiring to freely and voluntarily enter his plea without the influence of extraneous promises or threats. (*Id.* at 25-27).  The court accepted the plea, explained the procedure for preparation of the PSR to the defendant and the proceedings concluded. (*Id.* at 28-30).

A PSR was prepared and defendant was held accountable for 85.05 grams of cocaine powder and 481.83 grams of cocaine base, which when converted to a marijuana equivalency, yielded 9,653.61 kilograms of marijuana.   (PSR ¶ 13).  The corresponding base offense level was 34.  (PSR ¶ 18).  After a three level adjustment for acceptance of responsibility, defendant's total offense level was 31.  (PSR ¶¶ 24 & 25).  Defendant's criminal history category was II (PSR ¶ 34).  The applicable guidelines range was 121-151 months, but due to the application of the statutory mandatory minimum, the defendant was subject to a term of 20 years imprisonment. Neither the defendant nor the government filed any objections to the PSR. Defendant admitted his prior conviction at sentencing, after which the court verified that defendant understood that the only way to avoid the mandatory minimum sentence was through a Rule 35.  (Doc. 61 at 7-8, 11-12).  Defendant was sentenced

to the mandatory minimum term of 240 months imprisonment, ten years supervised release and a $100 special monetary assessment.  (Doc. 61).

Defendant appealed, and Chet Kaufman from the office of the Federal Public Defender was appointed to represent him on appeal.   Mr. Kaufman moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and the Eleventh Circuit granted this motion after its independent examination of the entire record revealed no arguable issues of merit.  (Doc. 79). Defendant's conviction and sentence were thus affirmed.

## II.  LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  *United*

*States v. Nyhuis,* **211 F.3d 1340, 1343 (11ᵗʰ Cir. 2000);** *Mills v. United States*, **36 F.3d 1052, 1056 (11ᵗʰ Cir. 1994),** *cert. denied*, **514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995);** *United States v. Rowan*, **663 F.2d 1034, 1035 (11ᵗʰ Cir. 1981);** *Hidalgo v. United States*, **138 Fed.Appx. 290 (11ᵗʰ Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.** *Nyhuis*, **211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.** *Sanders v. United States*, **373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").**

**Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.** *Lynn v. United States,* **365 F.3d 1225, 1234-35 (11ᵗʰ Cir. 2004);** *Bousley v. United States,* **523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998);** *Mills v. United States*, **36 F.3d 1052, 1055 (11ᵗʰ Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development");** *United States v. Frady*, **456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."** *Lynn,* **365 F.3d at 1234;** *Bousley,* **118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."** *Lynn*, **365 F.3d at 1235. A meritorious claim of**

ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Patterson, ___ F.3d ___,* 2010 WL 424404 (11th Cir. 2010); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v.*

*Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of

alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was

snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

A. <u>Trial Counsel was ineffective for failing to challenge electronic surveillance evidence</u>

Defendant claims that counsel was constitutionally ineffective because he did not challenge the government's use of electronic surveillance evidence, claiming that portions that were not played would support his claim of sentencing manipulation.

Defendant claims that during sentencing, the government showed a portion of video showing him taking possession of drugs without playing the corresponding

audio.  According to the defendant, the portion of audio and video not shown would have revealed that defendant questioned the informant as to why he was being given such a large quantity of drugs, and that he was reluctant to accept the drugs.  The assertion that this tape was played at defendant's sentencing is not supported by the sentencing transcript, and in fact in his reply, defendant admits that the tape was played at his detention hearing.  Still, he argues, this was an unconstitutional violation of due process.

Whether the video/audio tape was played at defendant's detention hearing had no impact on either the defendant's plea agreement or his sentencing.  The detention hearing was held before Magistrate Judge Larry Bodiford, not District Judge Smoak who ultimately sentenced the defendant.  Defendant has not shown deficient performance or prejudice for counsel's failure to object to the playing of the tape at his detention hearing.

## B.  Sentencing Manipulation

Defendant next contends that the government's sting operation using CI Bellamy was done in such a way that defendant was persuaded or coerced to possess an amount of drugs in excess of that which he was normally predisposed to possess.  He claims that both trial and appellate counsel were constitutionally ineffective for failing to pursue this issue.  Defendant goes so far as to say that the government "created the crime" in this case.  He claims that the CI repeatedly called the defendant, pressuring him to come to the CI's house where audio and video surveillance was set up and state and federal agents were waiting.  Then, "because of [the defendant's] known inability to pay for such a large quantity of drugs," the CI offered defendant the drugs on credit.  Defendant reluctantly accepted them and was thus entrapped into committing a greater offense that would subject him to increased punishment.  Defendant now asserts that trial counsel should have obtained copies of the defendant's and the CI's phone records, as well as a copy of

the audio and videotape of the transaction so that counsel would have been able to prove the outrageous conduct of the informant and that defendant was "entrapped into committing a greater offense."[1]

In *United States v. Sanchez*, 138 F.3d 1410 (11th Cir. 1998) the Eleventh Circuit defined sentencing entrapment as a claim that "a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998)). The *Sanchez* court explained that the focus of such a claim is the predisposition of the defendant to commit the greater offense, but noted that the Eleventh Circuit had rejected sentence entrapment as a viable defense. *Id.* (*Citing United States v. Miller*, 71 F.3d 813 (11th Cir.), *cert. denied*, 519 U.S. 842, 117 S.Ct. 123, 136 L.Ed.2d 73 (1996)).

The *Sanchez* court went on to differentiate sentencing factor manipulation, which focuses on the conduct of the government rather than the defendant, and noted "the opportunities that the sentencing guidelines pose for prosecutors to gerrymander the district court's sentencing options and thus, defendant's sentences." *Id.* (*citing United States v. Connell*, 960 F.2d 191, 194 (1st Cir. 1992)). It also noted that three other circuits that had approved this defense, *see United States v. Gibbens*, 25 F.3d 28 (1st Cir. 1994); *United States v. Jones*, 18 F.3d 1145, 1153 (4th Cir. 1994); and *United States v. Shephard*, 4 F.3d 647, 649 (8th Cir. 1993), the Tenth Circuit analyzes such claims under an outrageous conduct standard, *see United States v. Lacey*, 86 F.3d 956 (10th Cir.), cert. denied, 519 U.S. 944, 117 S.Ct. 331, 136 L.Ed.2d 244 (1996); and the Seventh Circuit has rejected the defense outright, *see United States v. Garcia*, 79 F.3d 74, 75 (7th Cir.), cert. denied, 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996). *Sanchez* 138 F.3d at 1414.

---

[1] Defendant's motion states "My trail counsel posed sentencing factor manipulation to the court at my sentencing hearing, but this was ineffective representation because he should have been aware that this issue was without merit at this stage of my case. (Doc. 80 at 10).

By 2007, the distinction between sentencing factor manipulation and sentencing entrapment was apparently of lesser significance. In *United States v. Bohannon*, 476 F.3d 1246, 1252 (11th Cir. 2007), the court quoted the *Sanchez* court's definition of sentence entrapment verbatim to define a sentence factor manipulation claim, stating "[a] sentencing-factor manipulation claim alleges that 'a defendant although pre-disposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment.'" *Bohannon*, 476 F.3d at 1252 (quoting *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998)).

In 2009 the Eleventh Circuit again considered the issue of sentencing factor manipulation, which was held to occur "when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus." *United States v. Docampo*, 573 F.3d 1091, 1097 (11th Cir. 2009) (quoting *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007)). Sentencing factor manipulation focuses on the government's conduct, and to successfully prevail on such a claim the defendant must meet the very high standard of establishing that the government's conduct is "sufficiently reprehensible." *Id.* (citing *Ciszkowski*, 492 F.3d at 1271). The *Docampo* court also noted that the Eleventh Circuit has "not yet recognized a defense of sentencing factor manipulation or permitted its application to a defendant's sentence." *Id.* at 1097-1098; see also *Ciszkowski; Sanchez, supra.* Thus, defendant's assertion that counsel was constitutionally ineffective for failing to pursue a claim that was and still is not viable in this circuit is without merit. Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); see also *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential

sentence)*; Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Even if circuit case law would have supported a claim of sentence factor manipulation, counsel's failure to pursue such a claim did not result in prejudice. Defendant's position in this case, that the government's allegedly outrageous conduct on the date of the controlled buy led to the sentence he received, is misguided. The PSR reflects that Cedricin Bellamy would have testified that over approximately one year's time, he had supplied the defendant with half-ounce and ounce quantities of cocaine base totaling approximately 9 ounces of cocaine base, or 255.15 grams. (PSR ¶ 8). Another individual, Richard Adderson could testify to having sold the defendant quarter and half-ounce quantities of cocaine powder and cocaine base weekly over a four month period of time, for a total of approximately 113.28 grams of cocaine base. (PSR ¶ 12). On the date of his arrest, law enforcement seized 85.05 grams of cocaine powder and 113.4 grams of cocaine base. (PSR ¶ 10). Although defendant's base offense level was calculated using the guidelines, because the statutory mandatory minimum term of 240 months exceeded the applicable guidelines range, the statutory sentence controlled. (PSR ¶ 60-61). Only 50 grams of crack cocaine was needed to support the application of the statutory mandatory minimum, so therefore either the testimony of Mr. Bellamy or Mr. Adderson about their prior sales to the defendant would have been sufficient to provide the basis for the defendant's 240 month sentence without taking into account the drugs seized during the controlled buy. Thus, even if there were an attempt at sentencing manipulation during the sting operation, under the

circumstances of this case, the drugs seized during the sting ultimately had no impact on defendant's sentence.

Defendant has failed to show either deficient performance or prejudice with respect to this claim.

## C. Involuntary Plea Agreement

Defendant next contends that trial counsel was constitutionally ineffective for advising him to accept a "blind plea." Defendant asserts that counsel told him to sign the plead agreement because if he did not, the court had to sentence him to twenty years in prison. He contends that this statement was framed in such a way as to lead him to believe that the court might sentence him to less than twenty years, which was impossible in light of the statutory mandatory minimum sentence. He also asserts that counsel failed to investigate the facts, circumstances, pleadings and laws in this case, and that had he done so, counsel would have used an argument about sentencing factor manipulation in his negotiations with the government in this case. Finally, he claims counsel took advantage of his mental disability during his representation.

To the extent defendant claims that he thought he might receive less than the mandatory minimum sentence by entering a plea, the transcript of the plea colloquy, set forth in some detail above, discredits his assertion. A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)*.* They are presumptively trustworthy and are

considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629; *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion....include credible, valid reasons why a departure from those earlier contradictory statements is now justified."); *see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing *Blackledge* and other cases); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)). Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *United States v. Green*, 2008 WL 1923102 (11th Cir. 2008) (Table, text in WESTLAW); *United States v. Cardenas*, 230 Fed.Appx. 933, 2007 WL 2119918 (11th Cir. 2007) (Table, text in WESTLAW). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)). Defendant has not shown why the statements he made under oath at the rearraignment should be viewed as false.

Defendant's second assertion, that counsel should have investigated and relied on sentencing factor manipulation in negotiating a better "deal" for his client, is legally unsupported, as set forth in the previous section. In any event, it is common knowledge that the United States Attorney for this district does not enter into plea "bargains." Defendants are afforded the chance to enter a plea "straight up" or to go to trial. Defendant does not suggest what else counsel could or should

have done in light of the fact that his final acquisition of distribution quantity drugs was captured on video and he was arrested with drugs on his person.

To the extent defendant appears to rely on his alleged mental limitations to support a claim for leniency, this is not the first time he has done this. Although he denied it, the PSR reflects that he told a transporting officer that he would beat the charge and go to Florida State Hospital. (PSR ¶ 11). The record reflects that defendant had a psychological examination in 2003 for the purpose of determining whether he had a mental disability. (PSR ¶ 50a). Testing at that time revealed a full scale IQ of 67, and defendant was deemed qualified for SSI benefits. (PSR ¶ 50a). The court-ordered examination in 2006 yielded significantly different results. In addition to finding defendant was competent to stand trial and responsible at the time of the offense conduct, defendant was diagnosed with Malingering, the main feature of which was "the intentional misrepresentation or exaggeration of physical or psychological symptoms, for gains such as receiving diminished legal ramifications." (PSR ¶¶ 48). Additionally, the forensic evaluation revealed a Composite IQ of 77 which was ten points higher than the previous test, and the examiner noted that there were "indications that the defendant may not have been putting forth his best effort on this and other tests of cognitive abilities." (Doc. 26 at 8, SEALED). There is no indication from the rearraignment transcript that defendant had any difficulty understanding the proceedings or that he attempted but was denied the opportunity to speak with counsel for clarification. The fact of his below average intelligence does not render his plea involuntary.

Defendant also claims for the first time in his reply that counsel was ineffective for advising him to plead to a conspiracy charge when the only evidence of his participation in a conspiracy was "unsubstantiated allegations made by the two Jackson County drug distributors." Defendant asserts that the evidence showed a series of buy-sell agreements with Bellamy, not the basis for a conspiracy. Because of this, he assets, his plea was not knowing and voluntary. He also asserts

in his reply that he was set up, entrapped and coerced into possessing the drugs by CI Bellamy. (Doc. 94 at 14 & 15).

Arguments raised for the first time in a reply brief are not properly before the reviewing court. See *United States v. Thomas*, 242 F.3d 1028, 1033 (11th Cir. 2002) (failure to raise issue in initial brief constitutes abandonment of issue); *United States v. Stinson*, 97 F.3d 466, 470 n. 2 (11th Cir. 1996) ("Issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (citation and quotation marks omitted); *United States v. Martinez*, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to reach issues raised for the first time in reply brief); *United States v. Oakley,* 744 F.2d 15532 (11th Cir. 1984) (citing *United States v. Benz*, 740 F.2d 903 (11th Cir. 1984)(arguments made for the first time in a reply brief are not properly before the Court). Even so, his arguments have no merit. To sustain a conviction for conspiracy the government must prove that 1) an illegal agreement existed to possess with the intent to distribute cocaine; 2) defendant knew of this agreement; and 3) defendant knowingly and voluntarily joined the agreement. *United States v. Charles,* 313 F.3d 1278, 1284 (11th Cir. 2002) (citing *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). The essence of the conspiracy, then, is an agreement, not the commission of the substantive offense. *United States v. Mercer,* 165 F.3d 1331, 1335 (11th Cir. 1999) (citing *Toler*, 144 F.3d at 1426). "Where the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown." *Mercer*, 165 F.3d at 1335 (quoting *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993); *United States v. Burroughs*, 830 F.2d 1574, 1581 (11th Cir.1987)); *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) ("the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement"). In the case of a purchaser of narcotics, agreement may be inferred when the evidence shows "a continuing relationship that results in the repeated transfer of illegal drugs to the

purchaser."  *Mercer,* 165 F.3d at 1335 (citing *United States v. Beasley*, 2 F.3d 1551 (11th Cir. 1993); *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984)). However, two parties charged with agreeing to distribute drugs might not be guilty of conspiracy when the evidence demonstrates that the parties understood their transactions to do no more than support the buyer's personal drug habit.  *United States v. Garcia*, 447 F.3d 1327, 1339 (11th Cir. 2006) (quoting *United States v. Dekle*, 165 F.3d 826, 830 (11th Cir. 1999)).  That was clearly not the situation in this case.

To the extent defendant asserts that the testimony of two other drug dealers would not have supported his conviction, he is incorrect.  In the case of a trial, it is well established that a judgment of acquittal "is not required because the government's case includes testimony by 'an array of scoundrels, liars and brigands.'" *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (quoting *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981)); *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985).  In light of what defendant was accused of, and admitted doing, the fact that the witnesses against him would be other drug dealers is hardly surprising and certainly would not be fatal to the government's case.

Defendant has failed to make a viable attack on counsel's advice or performance with respect to the plea agreement or the validity of same, and he is not entitled to relief.

## III.  Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 80) be DENIED.

At Pensacola, Florida, this 9th day of March, 2010.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).